**Albin DAHLSTROM, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 964.**

United States District Court,
D. Minnesota, Sixth Division.

March 15, 1955.

O. Russell Olson, Albert Lea, Minn., and David W. Louisell, Minneapolis, Minn., for plaintiff.

George E. MacKinnon, U. S. Atty., and Clifford Janes, Asst. U. S. Atty., St. Paul, Minn., for United States.

NORDBYE, Chief Judge.

Plaintiff brings this action under the Federal Tort Claims Act, 28 U.S.C.A. § 1346, to establish the liability of the United States for personal injuries which he incurred when an airplane, flown by an employee of the United States at a height of approximately 100 feet over the farm where plaintiff was loading hay, caused plaintiff's horses to become frightened and to run away. The testimony shows that when the horses bolted, Dahlstrom ran forward to take hold of the bit of one of them. However, he was unable to stop the runaway, was thrown to the ground, and the hayrack, two-thirds loaded with hay, ran over his leg and severely injured him. It is not disputed that the airplane in question was being operated by an employee of the United States, that the low altitude of the plane proximately caused the team to run away, and it is not claimed that Dahlstrom, the plaintiff, was guilty of any contributory negligence. However, it is not contended that the pilot knew, or in the exercise of reasonable care should have known, of the presence of the team along his course of flight.

The airplane in question, a twin-engine Beechcraft, was, at the time of this occurrence, in the use of the Civil Aeronautics Administration. It was piloted by one Schrader, who at that time was engaged in making a survey of the area near the airport at Alexandria, Minnesota, and it was in that connection that Schrader flew over the field where Dahlstrom was loading hay. Schrader was ordered to make this survey by his superiors in the Civil Aeronautics Administration for the purpose of establishing an instrument approach pattern for the Alexandria airport which could be used in connection with recently installed visual omnia range equipment. The object of the survey was to discover the location and height of any obstruction within a mile to either side of a line between the airport and the V. O.R. station 9.6 miles northeast of the airport. Schrader, the pilot, and Andrew C. Miller, who at the time of this flight was Chief of the Flight Operations Branch, Aviation Safety Division, Region 3, of the Civil Aeronautics Administration and had jurisdiction over flight operations matters arising in eight states, including Minnesota, testified that the usual, accepted and necessary method of conducting such a survey was to find from existing air navigation charts the height of the highest known obstruction in the area to be surveyed and then to cover the area flying at approximately the height of that known obstruction. It appears from the testimony of both Miller and Schrader that this is the most efficient and expedient method of obtaining the data necessary to the establishment of an instrument approach pattern. This method is employed because the height of obstructions cannot accurately be determined from above. It is necessary, therefore, that the pilot fly at eye level of obstructions discovered in the course of the survey and check their height by reference to his altimeter.

Plaintiff contends that the flight at 100 feet above the ground in a twin-engine airplane was a negligent act and was also a violation of Minn.Stat.Ann. § 360.012(3), which states that flight in aircraft over lands and water is lawful "unless at such low altitude as to interfere with the then existing use to which the land or water, or the space above the land or water, is put by the owner, or unless so conducted as to be imminently dangerous or damaging to persons or property lawfully in the land or water beneath." He also relies upon Minn. Stat.Ann. § 360.012(4) which states that the owner of aircraft is absolutely liable for injury or damages to persons or property on the land or water beneath "caused by the ascent, descent, or flight of the

aircraft, or the dropping or falling of any object therefrom, whether such owner was negligent or not * * *."

■ The parties concede that the pivotal issue in this case is whether the action is barred by the exception to the Tort Claims Act found in 28 U.S.C.A. § 2680(a) which precludes recovery upon "any claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused." Therefore, it may be assumed for the purpose of determining whether this case falls within the scope of that exception that the conduct of the employees of the United States amounted to negligence or was a violation of the Minnesota Statute, or both. There is persuasive authority to the effect that where the law of the state where the accident occurred makes the injurious flight of aircraft a trespass and therefore imposes liability even in the absence of negligence, then that flight is "wrongful" within the meaning of the Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq. See United States v. Praylou, 4 Cir., 1953, 208 F.2d 291; United States v. Gaidys, 10 Cir., 1952, 194 F.2d 762; Parcell v. United States, D.C.S.D.W.Va. 1951, 104 F.Supp. 110; cf. Boyce v. United States, D.C.S.D.Iowa 1950, 93 F. Supp. 866. Dalehite v. United States, 1953, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427, contains nothing to the contrary. Although there the Supreme Court held that the Act would not impose liability upon the United States merely by virtue of the fact that the manufacture and packing of fertilizer made with ammonium nitrate was an "extra-hazardous" activity, it did not limit the operation of the Act to cases involving negligence. It held only that the statute requires "some brand of misfeasance or nonfeasance" upon which to fasten liability. See 346 U.S. at pages 44–45, 73 S.Ct. at page 972. Here involved is an affirmative and intentional act—the

flight of a twin-engine aircraft at 100 feet above the ground—which both the common law and the statutes of this state label an unlawful trespass. Therefore, the complaint which alleges both negligence and trespass states a claim compensable under the Tort Claims Act unless it is barred by the discretionary function exception.

Both parties rely heavily on Dalehite v. United States, supra. However, the facts of that case were not at all similar to those disclosed here. And the Supreme Court quite deliberately refused to define, apart from the facts of the case before it, precisely where discretion ends. See 346 U.S. at page 35, 73 S.Ct. at pages 967, 968. Plaintiff seeks support from the concession made by the Government in that case that the tort of deliberate trespass to property is a "wrongful" act within the meaning of the statute. He concludes that such a concession means that trespass is beyond the operative effect of the discretionary exception. It seems clear that such a conclusion is unjustified. One issue presented in the Dalehite case, as previously pointed out in this memorandum, was whether the United States could be held upon a theory of liability without fault. In deciding this question, the Supreme Court did not reach the question of the discretionary function exception, but stated that if the plaintiff had not established some misfeasance or nonfeasance, he would not have fulfilled even the first requirement of the Act—the establishment of a negligent or wrongful act or omission. The Government's "concession" that "wrongful" included trespasses was of similar import and is not relevant in the examination of the exception here involved.

■■ But although the Dalehite case does not formulate a test for applying the discretionary function exception uniformly in all cases, it does clarify somewhat the fundamental purposes of the exception and does provide some insight into what factors ought to be considered in differentiating between discretionary

and non-discretionary action. In reaching the conclusion that the case before it involved discretionary action, the Supreme Court regarded several factors as important. First, the Court made it clear that the Act did not intend that the propriety of administrative action should be tested through the medium of a damage suit for tort. See 346 U.S. at page 27, 73 S.Ct. at pages 963, 964. Second, it indicated that the Act was not intended to subject the United States to liability arising from acts of a governmental nature or function. See 346 U.S. at pages 28 and 32, 73 S.Ct. at pages 964 and 966. Third, the Court pointed to legislative history which indicated that the Act was not to authorize actions for damages growing out of an authorized activity, such as a flood control or irrigation project, where no negligence is shown, and the only ground for suit is the contention that the same conduct by a private individual would be tortious. 346 U.S. at pages 27 and 30, 73 S.Ct. at pages 963, 964 and 965. Fourth, it was pointed out that the acts found culpable by the district court were performed under the direction of a plan developed at a high level under a direct delegation of plan-making authority from the apex of the executive department, and fifth, that the establishment of the "plan" clearly required the exercise of expert judgment. See 346 U.S. at page 40, 73 S.Ct. at page 970. These considerations, of course, are closely related. And it seems to this Court that all of them taken together mean that the discretionary function exception is merely a recognition of a necessary corollary to the separation of the judicial from the executive and legislative functions. That corollary is that courts should not sit in judgment upon the propriety of legislation or of administrative action which by law is committed to agency discretion. The discretionary function exception as interpreted by the Supreme Court means that such action should not be reviewed in an action for damages even though it is arbitrary and unreasonable.

In addition to the Dalehite case, plaintiff cites the two opinions in the case of Smith v. United States, D.C.D. Del.1953, found at 113 F.Supp. 131 and 116 F.Supp. 801, 802. That case involved a claim that government employees were negligent in the manner in which they conducted the work incident to the construction of an airbase. Both opinions were rendered upon the Government's motion to dismiss on the ground that no claim for relief was stated in the complaint. The court both times held merely that defendant had not established the " 'certainty of no right to relief' " which must afford dismissal. The court did elaborate as follows:

"* * * plaintiff Smith wants an opportunity to prove, that his damages were caused by non-discretionary steps in the construction of the Base. For aught we know, the damage may have been due to negligent disregard, rather than strict observance, of the Army's plans and specifications. Such is actionable negligence under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq., as interpreted in Dalehite v. United States, supra." 116 F. Supp. 801, 802.

Somerset Seafood Co. v. United States, 4 Cir., 1951, 193 F.2d 631, involved an action for damages resulting from the alleged marking by the United States of a wrecked vessel. In that case the court stated at page 635 of 193 F.2d, that "even if the decision to mark or remove the wreck be regarded as discretionary, there is liability for negligence in marking after the discretion has been exercised and the decision to mark has been made." In Hernandez v. United States, D.C.D.Hawaii, 1953, 112 F.Supp. 369, it was held that the United States would be liable for negligence arising out of the erection of a road block across a public road, the court stating that although the decision to erect the road block might be discretionary, there was a duty to maintain the same in a careful manner. The princi-

ple applied in each of these cases seems sound and is essentially this: where the particular negligent act relied upon to establish liability is either a deviation from or simply not covered by the plan or schedule of operations decided upon in discharge of a discretionary authority, then the negligence, if proven, is actionable. However, each case seems to recognize that if the alleged negligence is (1) the making of an unreasonable choice by an agent who is directed by the statute or regulation giving him power to act to exercise his judgment with respect to the advisability of undertaking or the manner of carrying out the business of the United States, or (2) the faithful carrying out by a subordinate of a decision so made, then the discretionary function exception precludes recovery.

These principles applied to the instant case, however, seem to dictate the conclusion that the plaintiff's claim is based upon the performance of a discretionary function. The Court is persuaded that Schrader was faithfully complying with the orders of the Civil Aeronautics Administration in flying at 100 feet over the plaintiff's farm. Although Miller remarked while on the witness stand that Schrader's orders included the instruction to use *his* discretion, the Court is not persuaded that this remark should be interpreted to mean that it was Schrader, the pilot, who decided that the most efficient way to measure the height of landing obstructions was to fly at eye level of obstructions in a twin-engine airplane. Miller was, at that point in the testimony, responding to a general line of inquiry relating to Schrader's instructions relative to safe flying techniques. Miller's response that Schrader was to "fly safely in his discretion" is not inconsistent with his previous testimony that Schrader was merely following orders in flying in the manner that he did. Schrader was assigned a twin-engine Beechcraft for performing all of his duties as a Civil Aeronautics Administration Safety Division pilot. Surely

he could not have refused to make the survey at Alexandria Airport or insisted upon a new aircraft for this or similar surveys. He was ordered to search the Alexandria area for possible landing obstructions. The Court believes that this order necessarily included the order to make the search in the customary and necessary manner, i. e., by flying at eye level of obstructions and checking their height by reference to the plane's altimeter.

The plaintiff disputes the necessity of traveling 100 feet above the earth as Schrader did, and criticizes the use of a twin-engine airplane, which makes more noise than would a single-engine plane. The Court might be inclined to agree with plaintiff. However, it is precisely this sort of amateur second-guessing that the discretionary function exception was intended to prevent. Miller testified that a twin-engine plane was safer for low flying because such an aircraft could avoid a crash even though one engine might fail. He also testified that the twin-engine Beechcraft was used by the Civil Aeronautics Administration because it more closely resembles the type of aircraft usually used in civilian commerce, and that it would be impracticable to use a different kind of plane for each of many tasks required of Civil Aeronautics Administration pilots. The testimony is also to the effect that the height of objects cannot be accurately determined except by flying at approximately eye level.

■ The decisions in the instant case held discretionary perhaps are not particularly high-level ones. But it was not the intent of Congress to exempt from tort liability only cabinet-level decisions on matters of national policy. This is clear from the only portion of the Dalehite opinion which purports to be of general applicability, at page 35 of 346 U.S., at page 968 of 73 S.Ct.:

"* * * It is enough to hold, as we do, that the 'discretionary function or duty' that cannot form

a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion."

The Administrator of Civil Aeronautics seems quite clearly vested with a discretionary authority with respect to the establishment of aids to navigation. Title 49 U.S.C.A. § 452(b), provides that

"(b) The Administrator shall *insofar as practicable* designate and establish civil airways with relation to visual, mechanical, electrical, radio, or other like aids along the ground for air navigation, * *." [Italics supplied.]

Under this statute, it is the Civil Aeronautics Administration, and not any court, which is to determine when it is practicable to establish air navigation aids. The judgment of this agency is that the most practicable and efficient way of establishing an instrument approach path is to have one of its pilots conduct a survey like that which Schrader conducted. This Court has no authority under the Tort Claims Act to hold that in the future the Civil Aeronautics Administration must use single-engine planes or survey the area surrounding airports only from the ground.

It follows from the foregoing that plaintiff has no enforcible claim against the United States under the Federal Tort Claims Act. The Court adopts the above as its findings of fact and as conclusions of law determines that plaintiff's claim must be dismissed with costs to the defendant. Let judgment be entered accordingly.

An exception is allowed.