**Albin DAHLSTROM, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15399.**

United States Court of Appeals Eighth Circuit.

Jan. 10, 1956.

David W. Louisell, Minneapolis, Minn. (Russell Olson, Albert Lea, Minn., on the brief), for appellant.

Benjamin Forman, Attorney, Department of Justice, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., George E. MacKinnon, U. S. Atty., St. Paul, Minn., and Paul A. Sweeney, Attorney, Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VOGEL, Circuit Judges.

WOODROUGH, Circuit Judge.

During the early afternoon of July 1, 1951, the plaintiff in this action and his helper by the name of Plagman were loading hay onto a hayrack in a hayfield situate inside the city limits of Alexandria, Minnesota about a mile northeast of the Alexandria airport. They had a team of horses hitched to the hayrack and three children on top of the load and suddenly an 8500 pound, twin-engine Beechcraft airplane came flying over them barely clearing the tree tops, not more than a hundred feet in the air and making a very great and alarming noise. Although the team was used to airplanes at lawful heights, this one roaring towards them at the low altitude frightened the horses so that they shied and bolted and when appellant tried to stop them, he fell and was run over and was injured. The plane was owned by the Civil Aeronautics Administration (C. A. A.) and the pilot operating it was Norman W. Schraeder, a flight operations expert in the employ of the C. A. A. One Mel Good, another pilot employed by C. A. A., was working with him on the plane.

The plaintiff brought the action against the United States to recover damages for his injuries under the provisions of the Tort Claims Act.[1] He claimed that "defendant negligently flew the airplane at a low altitude" and that "under the circumstances the persons responsible for the operation of this airplane, if they were private persons, would be liable to plaintiff for his damages resulting from the accident."

The government defended on the ground set up in amended answer that "the claim of the plaintiff, if any, is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government and therefore falls within the exceptions of [28 U.S.C. § 2680(a)]."[2]

The case was tried to the Court without a jury and the Court embodied its findings and conclusions in its opinion which is published at D.C., 129 F.Supp. 772.

It was not disputed that the low altitude of the plane proximately caused the team to run away and it was not claimed that the plaintiff was guilty of any negligence.

But it appears that the flight of the airplane was made in connection with a survey ordered by the Civil Aeronautics Administration for the purpose of establishing an instrument approach pattern for the Alexandria airport which could be used in connection with recently installed visual omnia range equipment. The Court found from the evidence that

---

1. The Federal Tort Claims Act was enacted as Title IV of the Legislative Reorganization Act of 1946, 60 Stat. 842, 28 U.S.C. (1946 Ed.) § 921 et seq. While subsequently repealed, its provisions were reenacted into law, under the revision of the Judicial Code as 28 U.S.C. §§ 1291, 1346, 1402, 1504, 2110, 2401, 2402, 2411, 2412, 2671–2680, effective September 1, 1948, 62 Stat. 869, 992.

2. "The provisions of this chapter and section 1346(b) of this title shall not apply to—

"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

it was the decision and judgment of the Administration that the most expedient and efficient method of obtaining the data necessary to the establishment of the instrument approach pattern was to find from existing air navigation charts the height of the highest known obstructions in the area and then to cover the area by airplane, flying at approximately the height of the known obstruction. The height of the obstructions cannot be measured from above and the pilot must fly at eye level of obstructions discovered in the course of the survey and check his height by reference to his altimeter. The Court held that it was the determination of the Board in the exercise of its discretion to have its pilots conduct a survey like that conducted by Schraeder and Good and that the pilots were faithfully complying with the orders of the Administration in flying the plane at an elevation of about 100 feet in making the survey.

The Court observed that the flight of the twin-engine aircraft at 100 feet above the ground was an affirmative and intentional act which both the common law and the statutes of the state label unlawful trespass and that "the complaint states a claim compensable under the Tort Claims Act unless it was barred by the discretionary function exception." The Court concluded that the action of the airplane pilots in accord with the judgment and order of the Administration constituted performance of a discretionary function on the part of the federal agency within the exception of the Act and could not form a basis for the suit under the Act.

Judgment for dismissal of the action at plaintiff's costs was entered accordingly and plaintiff appeals.

He contends for reversal that the Court erred in its finding of fact that the plan, decision or order of the Administration for making its survey included operating the two-engine plane at the height of 100 feet or less above the area to be surveyed. It is argued for appellant that the survey could have been made on the ground or with a lighter and less frightening plane but the evidence amply supports the finding as made by the District Court. It must be assumed here that it was the Administration which prescribed the making of the survey by means of its twin motored plane intending that it would be operated by its pilot at low levels.

But appellant contends also that the Court erred in its conclusion that the particular act which caused the damage in this case, that is, the act of flying the plane at the low level in immediate proximity to the place within the city limits of Alexandria where the men and the children, the team of horses and the hayrack were conspicuously engaged in the haying, was within the order of the Administration or the discretionary exception of the Act.

Appellant presents in his brief: "We believe that when the government, at the planning level, determines programs, plans, specifications, or schedules of operations, it is exercising an immune discretion and any activity pursuant to such a plan does not give rise to liability under the Act. But if the government, at the operational level, acts either contrary to the plan or in a manner not regulated by the plan then the activity would not be discretionary and redress can be had for the resulting injury." Appellant argues that there was no high level governmental agency authorization of this 100 foot level flight over the haymaking assemblage in the city limits of Alexandria, Minnesota. On the contrary the Administration put two highly skilled pilots on an airplane and the plane had controls with which it could be maneuvered up or down or towards any point of the compass at the will of the pilots. There was broad daylight and so far as appears visibility was in no way restricted. The men in the plane had a mere job of work to do and they flew the plane so close to the horses simply because they did not look where they were going. There were two of them and their eyesight was presumably good but they were so preoccupied that they did not

even notice when they caused the runaway and they first found out about it after they landed at the airport. But like other workmen on a job, they knew they were not working in a vacuum nor even *over* an unoccupied area. They were above a city and a group of people at work with a team of horses hitched to a hayrack in an open field. They had no more call to shut their eyes to where they were going and to the obvious rights of other people than the driver of a United States mail truck would have at an intersection in the city. Appellant argues that the project of making the survey by airplane prescribed by the Administration could have been accomplished "without visiting such dreadful injuries" upon the appellant and that the men in the airplane working "without any command from higher authority" "failed to be as careful as they might have been." One or the other or both of the pilots should have been taking reasonable care to look where they were going and not to inflict injury upon the appellant.

The case was tried in the District Court before the Supreme Court had handed down its decisions in Indian Towing Co. v. United States, 76 S.Ct. 122, and Union Trust Co. v. Eastern Air Lines, 76 S.Ct. 192, but in making our determination as to the questions of law involved, we are bound to follow those decisions to the extent they may be applicable.

In its opinion in the Indian Towing Company case, the Supreme Court observed that the extent of the government's liability under the Federal Tort Claims Act was "still undetermined", notwithstanding the decisions of the Supreme Court in Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427; Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152, and Eastern Transportation Co. v. United States, 272 U.S. 675, 47 S.Ct. 289, 71 S.Ct. 472. The Court noted that [76 S.Ct. 124] "the Government * * * does not deny that the Federal Tort Claims Act does provide for liability in some situations on the 'operational level' of its activity." "But the Government contends that the language of § 2674 (and the implications of § 2680) imposing liability 'in the same manner and to the same extent as a private individual under like circumstances * * *' must be read as excluding liability in the performance of activities which private persons do not perform. Thus, there would be no liability for negligent performance of 'uniquely governmental functions.'" "The Government reads the statute as if it imposed liability to the same extent as would be imposed on a private individual 'under the same circumstances.' But the statutory language is 'under like circumstances, * * *'." "Furthermore, the Government in effect reads the statute as imposing liability in the same manner as if it were a municipal corporation and not as if it were a private person, and it would thus push the courts into the 'governmental'—'nongovernmental' quagmire that has long plagued the law of municipal corporations. * * *" "The Federal Tort Claims Act cuts the ground from under that doctrine; it is not self-defeating by covertly embedding the casuistries of municipal liability for torts." * * * "While the area of liability is circumscribed by certain provisions of the Federal Tort Claims Act, see 28 U.S.C. § 2680, 28 U.S.C.A. § 2680, all Government activity is inescapably 'uniquely governmental' in that it is performed by the Government." "There is nothing in the Tort Claims Act which shows that Congress intended to draw distinctions so finespun and capricious as to be incapable of being held in the mind for adequate formulation." "The broad and just purpose which the statute was designed to effect was to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable and not to leave just treatment to the caprice and legislative burden of individual private laws."

In the Towing Co. case from which the foregoing excerpts are taken, the damages for which the Government was sued

under the Act were caused by the failure of the lights in a government lighthouse resulting in the grounding of a tug and water damage to a cargo. The light was out because members of the United States Coast Guard negligently failed in their duty of inspection and maintenance. The Government did not defend on exactly the same ground of "discretionary function" that is here relied on but contended that the lighthouse operation was a "uniquely governmental" activity such as is not carried on by private persons and therefore not within the scope of 28 U.S.C. § 1346(b).

But in the next case in pari materia considered by the Supreme Court, United States v. Union Trust Co., 76 S.Ct. 192, where the Supreme Court reviewed Eastern Air Lines v. Union Trust Co., 95 U.S.App.D.C. 189, 221 F.2d 62, on certiorari duly granted, the Government did defend the action for damages brought against it under the Act on the same ground of "discretionary function" that it relies on here.

The Court of Appeals for the District of Columbia Circuit had considered and discussed that defense in a very elaborate opinion and decided it against the Government. The Supreme Court, "without opinion and relying solely on last month's decision in Indian Towing Co. v. United States, supra, holds that the Federal Tort Claims Act gives the Federal District Court jurisdiction of a suit for wrongful death of airline passengers in a plane collision that resulted from the negligence of Government employees operating a Government control tower. The Court grants certiorari and affirms a decision that the discretionary exemption of the Tort Claims Act does not shield the United States from liability." United States Law Week, December 6, 1955, Vol. 24, No. 21.

Upon full consideration the Circuit Court had held that the Government had assumed the task of guiding and directing the air traffic at an airfield and that its officers performing that work in the tower acted or failed to act at an operational level. The Court said [95 U.S. App.D.C. 189, 221 F.2d 78]: "While they were in a sense exercising discretion as to what they should and should not do, they were not performing the sort of discretionary functions contemplated by § 2680(a) * * *." "It is therefore our opinion that, if a Government towerman * * * is guilty of some * * * negligent act or omission in doing his work, the Government is liable for resulting injury in the same manner and for the same reason that it is liable for injury done by the driver of a mail truck who, in exercising discretion as to how to drive, negligently runs through a red traffic light."

The reasoning and action taken by the Supreme Court in these two cases, published since the case at bar was decided, compels the conclusion that the Government should have been held liable to the injured plaintiff in this case if the Government employees who operated the airplane were negligent in flying it in such close proximity to him and his team. Conceding that the Administration required the pilots to make a survey by twin-engine airplane rather than on the ground and that such survey included low level flying, the question remained whether the pilots in the performance of their work took reasonable care and precaution to carry on their flight so as not to injure persons working like the plaintiff with horses in the open field within a city area. Though there were two of the pilots apparently in position between them to look out for people with teams of horses in open fields as well as for flight obstacles, the record here discloses no action by either of them to guard against the runaway and damage they caused and none is referred to in the Court's opinion. The record is plainly to the effect that the pilots received no specific direction as to any precautions to be taken by them and they were on their own in that regard. Their superior officer testified "It is up to the pilot to plan his flight and maneuver his aircraft in such a way that he can efficiently and safely perform the work."

The opinion of the trial court discloses that the Court made no specific finding as to whether the pilots were or were not guilty of negligence proximately causing plaintiff's injury in their operation of the airplane. The Court assumed that they were merely for the purpose of determining whether or not the case fell within the "discretionary exception" of the Act.

██. On the whole case it is held that the Court erred in its conclusion "that the plaintiff's claim was based upon the performance of a discretionary function." We think that in the light of the Supreme Court decisions of November 21 and December 5 supra, the District Court should make specific finding whether or not the pilots of C.A.A. were guilty of negligence proximately causing injury to plaintiff and award damage if they were and deny it if they were not.

Reversed and remanded.