Mrs. Cordie Ola FAIR et al.,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 15840.

United States Court of Appeals
Fifth Circuit.

May 25, 1956.

W. James Kronzer, Jr., Fred Parks, Houston, Tex., Parks, Cire & Jamail, Houston, Tex., Hill, Brown, Kronzer & Abraham, Houston, Tex., of counsel, for appellants.

Lester S. Jayson, Atty., Dept of Justice, Washington, D. C., Malcolm R. Wilkey, U. S. Atty., Gordon J. Kroll, Asst. U. S. Atty., Houston, Tex., Benjamin Forman, Atty., Paul A. Sweeney, Chief, Appellate Sec., Julian H. Singman, Atty., Dept. of Justice, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

This appeal involves the question whether the Court below committed error in dismissing the complaint under Rule 12(b), Fed.Rules Civ.Proc. 28 U.S. C.A. for failure to state a claim upon which relief could be granted. Plaintiffs, appellants here, are the statutory beneficiaries under Texas Law of Jessie Clyde Fair, Robert P. Peterson and Verdie Carroll Cooper, and the defendant, appellee here, is the United States of America. Action was brought under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2674 and 2680(a).[1] The facts charged in the complaint are these:

1. "§ 1346. *United States as defendant*

\* \* \* \* \*

"(b) Subject to the provisions of chapter 171 of this title, the district courts \* \* \* shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while

On July 10, 1952, at the Cullen Nurses Home, Memorial Hospital in Houston, Texas, Captain Reynord F. Haywood of the United States Air Force, stationed at Ellington Air Force Base, shot and killed Miss Cooper, a student nurse, and Messrs. Fair and Peterson, Guards employed by Burns Detective Agency. He then shot and killed himself.

Captain Haywood had previously threatened the life of Miss Cooper, and the Base Commander, the Provost Marshal, and the Air Force doctors at Ellington Base Hospital all knew of those threats and that Burns Detective Agency was employed to protect Miss Cooper and other persons at the hospital. So knowing, the Provost Marshal promised Burns that they would be notified of any proposed release of Captain Haywood so that adequate precautions could be taken for the safety of Miss Cooper and her guards. Notwithstanding this agreement Haywood was released without any notice being given to Burns or anybody else, and the tragedy mentioned above followed.

A cursory psychiatric examination was made of Haywood and he was released. It is charged that the Government was negligent in releasing the captain with knowledge of his homicidal tendencies and the threats he had made under such circumstances as indicated that he would carry them out; in failing to provide adequate facilities for psychiatric examination and to make a reasonably complete examination of him before his release; in failing generally to exercise reasonable care in connection with said examination;

in failing to keep him under observation for a sufficient length of time to determine with respect to his mental competence; and in releasing him from the hospital without giving the warning which the Government agents had agreed to give.

After answering, the Government moved to dismiss the complaint based upon the contention that the exclusionary provisions of the Federal Tort Claims Act defeated the Court's jurisdiction, and that the complaint stated no claim upon which relief could be granted. In a memorandum opinion the District Court held that, under the allegations of the complaint, the diagnosis, care and treatment of Captain Haywood were within the discretionary function exception to the Federal Tort Claims Act and, therefore, not actionable; that the Government owed no duty to the general public to maintain adequate hospital facilities at the Air Force base; and that the agreement of the Provost Marshal imposed no liability upon the United States because the promise was a gratuitous undertaking without the scope of the Provost Marshal's employment and was not actionable under the law of Texas. Plaintiffs contend here that these holdings of the District Court were erroneous and defendant asserts that they were manifestly correct. Thus are the issues before us defined.

In reaching its basic conclusion that the United States was not liable under the Act the Court below was guided chiefly by three court decisions.[2] In the

acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. * * *"

"§ 2674. *Liability of United States*
"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages. * *"

"§ 2680. *Exceptions*
"The provisions of this chapter and

section 1346(a) of this title shall not apply to—
"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

2. Kendrick v. United States, D.C.N.D.Ala. 1949, 82 F.Supp. 430; Smith v. United

meantime, however, the Supreme Court has rendered three decisions [3] under which the reach and effect of the Act have been extended in keeping with the attitude it had expressed as early as the Yellow Cab case in 1950.[4]

In Williams, the Supreme Court vacated the judgment of the Court of Appeals of the Ninth Circuit and remanded the case with instructions to apply as controlling the California doctrine of *respondeat superior*. The Court of Appeals had denied recovery against the United States for personal injuries received as the result of negligence by a soldier in active service, but absent from his post of duty on a pass and "joy riding" in a government car while on a "recreation" trip. It had held that, while off duty, the soldier was " 'subject to the control of no one but himself' " [215 F.2d 809], and that the doctrine of *respondeat superior* did not apply under the circumstances.

In Indian Towing Co., the Supreme Court reversed a decision rendered by this Court *Per Curiam*. We had affirmed an order of the District Court dismissing a complaint brought under the Act seeking recovery for damages to the cargo of a barge which ran aground on Chandeleur Island, " 'due solely to the failure of the light on the island.' " Recovery had been sought on the ground that the Chief Petty Officer and other officers and members of the Coast Guard had been guilty of negligence in failing properly to maintain the light warning of the presence of the island. We held that the complaint stated no claim under the authority of the Feres and Dalehite cases [5] from the Supreme Court.

Before the Supreme Court, the Government conceded that it could not escape liability under Section 2680 of the Act withdrawing immunity where the claim is based upon a government employee's "failure to exercise or perform a discretionary function * * * whether or not the discretion involved be abused." It insisted rather that the implications of that section, coupled with the language of Section 2674, excluded liability for the claim because the activity was one such as private persons do not perform, this being a "uniquely governmental function."

The Supreme Court rejected the contention, holding that it was hornbook tort law "that one who undertakes to warn the public of danger and thereby induces reliance must perform his 'good samaritan' task in a careful manner." The Court further rejected the "uniquely governmental function" idea, using language which has application to the case now before us 350 U.S. at page 65, 76 S.Ct. at page 124:

"Furthermore, the Government in effect reads the statute as imposing

States, D.C.Del., 113 F.Supp. 131; and Smart v. United States, 10 Cir., 1953, 207 F.2d 841.

3. Williams v. United States, 1955, 350 U.S. 857, 76 S.Ct. 100, reversing Williams v. United States, 9 Cir., 1954, 215 F.2d 800.
   Indian Towing Co. v. United States, 1955, 350 U.S. 61, 76 S.Ct. 122, reversing Indian Towing Co. v. United States, 5 Cir., 1954, 211 F.2d 886.
   United States v. Union Trust Co., 1955, 350 U.S. 907, 76 S.Ct. 192, affirming United States v. Union Trust Co. (and companion case, Eastern Air Lines, Inc., v. Union Trust Company), 1955, 95 U.S. App.D.C. 189, 221 F.2d 62, which in turn affirmed Union Trust Co. v. United States, D.C.D.C.1953, 113 F.Supp. 80.
   And cf. Dahlstrom v. United States, 8

Cir., 1956, 228 F.2d 819, reversing same case, D.C.Minn.1955, 129 F.Supp. 772.

4. United States v. Yellow Cab Co., 1950, 340 U.S. 543, 550, 71 S.Ct. 399, 404, 95 L.Ed. 523:
   "The proceedings emphasized the benefits to be derived from relieving Congress of the pressure of private claims. Recognizing such a clearly defined breadth of purpose for the bill as a whole, and the general trend toward increasing the scope of the waiver by the United States of its sovereign immunity from suit, it is inconsistent to whittle it down by refinements."

5. Feres v. United States, 1950, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152; Dalehite v. United States, 1953, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427.

liability in the same manner as if it were a municipal corporation and not as if it were a private person, and it would thus push the courts into the 'governmental'—'non-governmental' quagmire that has long plagued the law of municipal corporations. * * * The fact of the matter is that the theory whereby municipalities are made amenable to liability is an endeavor, however awkward and contradictory, to escape from the basic historical doctrine of sovereign immunity. *The Federal Tort Claims Act cuts the ground from under that doctrine; it is not self-defeating by covertly embedding the casuistries of municipal liability for torts.*" [Emphasis added.] [6]

The extent of the confusion encountered in an effort to apply the rejected doctrine is well illustrated in the cases mentioned in f. n. 1 following the above quotation.

The Court then decided that the Government could not escape liability under the "discretionary function" exemption of Section 2680 and that, having, through the Coast Guard, exercised its discretion to operate a light on Chandeleur Island "and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order * * * or give warning that it was not functioning." It was also held that this Court had not properly understood the holding of the Dalehite case, the Supreme Court feeling that the differences between Dalehite and Indian Towing were obvious. It is interesting that, in referring to that distinction, the Supreme Court alluded to its decision in Workman v. New York City, 1900, 179 U.S. 552, 574, 21 S.Ct. 212, 45 L.Ed. 314, holding the City of New York liable for the negligent operation of one of its fire boats. It is further worthy of note that the minority in Dalehite, whose dissent was indicative of the desire to give broad extension to the Tort Claims Act, had become the majority in Indian Towing Co. A reading of the opinions and the dissents in the two cases leads to the conclusion that Indian Towing Co. represents a definite change in attitude on the part of the Supreme Court.

That disposition to expand the coverage of the Act and circumscribe its limiting exceptions is further reflected in Eastern Air Lines.[7] A husband and wife had been killed in the collision between an Eastern Air Lines passenger plane and one belonging to the Bolivian Air Force. Union Trust Company, as executors of their estates, brought suit against Eastern Air Lines, the pilot of the Bolivian plane, and the United States. The Government, referring to such cases as Feres and Northwest Airlines,[8] claimed that the function of regulation of air traffic by means of the control tower at the field where the collision took place was a purely governmental function belonging to the sovereign and that no liability of a private individual could be found even remotely analogous to that asserted against the United States, and argued that, on both grounds, the United States was not liable. The action proceeded before a jury as to the case against Eastern Air Lines and before the Court as to the case against the Government, resulting in a judgment against both for a total of $65,000 for the two deaths.

The District Court wrote an excellent opinion, considering many cases and concluding "that the fiction of sovereign immunity is for the most part outmoded and as far as it relates to the act in question, preserved only in those specific exceptions which Congress has specifically indicated and of which the activity with which we are here concerned is not one." 113 F.Supp. at page 84. The following summation of the issues by the District Court well expresses the attitude exemplified in the Supreme Court decisions un-

---

6. 350 U.S. at page 65, 76 S.Ct. at page 124.
7. Listed as United States v. Union Trust Co. in Note 3, supra.

8. Northwest Airlines v. State of Minnesota, 1944, 322 U.S. 292, 64 S.Ct. 950, 88 L.Ed. 1283.

der consideration: "When the Government, as here, takes upon itself the function * * * of the regulation of air commerce and the responsibility, among other things, of regulating the flow of traffic at a public airport, the assumption of such a responsibility involves something further, namely, not only an activity designed to be protective of the interest of that amorphous group known as the public as a whole, but that of individuals as well, against potential hazards incident to such performance and implicit in its undertaking. And if injury or death results as a consequence of the negligence of its servants or agents so engaged, Congress has decreed that the mantle of sovereignty which heretofore has protected it, falls from its shoulders and thus what was formerly at best an unenforceable moral obligation is thus transmuted into an actionable legal right. And whatever exceptions there are, this is not one of them." 113 F.Supp. at page 84.

The Government, in its appeal from that decision, advanced before the Court of Appeals of the District of Columbia the same arguments against liability which it makes here, and that Court, in a well reasoned opinion, rejected them.[9] The Court of Appeals reviewed the history of the establishment and operation of control towers, the Manual of Operations issued under the Civil Aeronautics Act of 1938, 49 U.S.C.A. § 401 et seq., and the general rules governing the operation of airports and control of air traffic. It reached the conclusion that "the tower operators merely handle operational details which are outside the area of the discretionary functions and duties referred to in § 2680(a) * * *."[10] It considered at length the Supreme Court decision in Dalehite, and concluded that, under it, the Government is liable for the negligence of its employees at the operational level where there is "no 'room for policy judgment and decision.'" Applying those cases, the Appeals Court concluded that the government operatives in the control towers were not called upon to make "'decisions responsibly made at a planning level'", but that "The tower operators acted, and failed to act, at an operational level. While they were in a sense exercising discretion as to what they should and should not do, they were not performing the sort of discretionary functions contemplated by § 2680(a) and clearly described in the Dalehite decision."

[redacted] The handling and decision of the case by the District Court and the Court of Appeals were approved and affirmed in the Supreme Court, citing only Indian Towing as its authority. It is clear here, therefore, that based on those holdings, the discretion vested in the medical staff at Ellington Air Base under the regulations[11] relied upon by the Government was a discretion at the operational level and that the doctors were on their own and that the defendant was liable for what they did or failed to do under established legal standards.

In addition to these Supreme Court cases, it will be helpful to consider a Court of Appeals case which has come out since their decisions, Dahlstrom v. United States, supra. There, the Court of Appeals of the Eighth Circuit reversed a

9. The Court of Appeals thus epitomizes the Government's arguments, 221 F.2d at page 73: "The Government insists that its tower operators perform governmental functions of a regulatory nature; that no private individual has such power of regulation; that therefore the Act does not permit suit based on negligent performance of their duties."

10. In reaching that conclusion is relied on our case of Costley v. United States, 1950, 181 F.2d 723, and on Somerset Sea Food Co. v. United States, 4 Cir., 1951, 193 F.2d 631, and United States v. Gray, 10 Cir., 1952, 199 F.2d 239.

11. Each of the regulations establishing non-detention of psychiatric cases as the generally recommended policy contained an exception providing for detention under "very unusual conditions." It could readily be found that a patently psychopathic individual threatening to kill a specified person should be classified under the exception.

294

judgment of the United States District Court for the District of Minnesota. A farmer, injured by a team of run-away horses frightened by the low approach of an airplane, sued the United States and was denied recovery because the trial Court held that the activity came within the exemption provided by Section 2680 (a) of the Act. The District Court's opinion was based largely on Dalehite, from which that Court concluded that the "Act was not intended to subject the United States to liability arising from acts of a governmental nature or function." [129 F.Supp. 775.] The judge felt that, in making the very low approach, the C. A. A. pilot was carrying out the orders and policies of the Civil Aeronautics Authority outlining the customary and necessary manner of checking obstructions in prescribing flight lanes to and from a new airport. The evidence showed that the pilot was following meticulously the plans worked out at the higher level of discretion with respect to which the District Court stated: "The judgment of this agency is that the most practicable and efficient way of establishing an instrument approach path is to have one of its pilots conduct a survey like that which Schrader conducted."

But the Court of Appeals did not accept as accurate this statement of principles or the conclusions of the District Court. It adverted to the fact that the District Court had rendered its opinion before the Supreme Court's decision in Indian Towing and Eastern Air Lines, and felt that these Supreme Court decisions so expanded the coverage and restricted the exemptions of the Act that the reasoning of the Court below could not be sustained. Feeling that the Eastern Air Lines case was authority for the concept that "the Government had assumed the task of guiding and directing the air traffic at an airfield and that its officers performing that work in the tower acted or failed to act at an operational level", the Court concluded that "The record is plainly to the effect that the pilots received no specific direction as to any precautions to be taken by them and

they were on their own in that regard." [228 F.2d 823.] The Court of Appeals, therefore, rejected the idea that the Government was protected by the exemption from the negligent exercise of discretion at the operational level by the pilot in charge of the plane.

From the Dahlstrom case and the decisions of the Supreme Court above discussed and those which preceded it, these general principles may be distilled:

■ The Government has waived its immunity with respect to the acts and omissions of members of the armed forces while on or off active duty, so as to be liable for their acts and omissions to the same extent that private employers are held under state law for the acts and omissions of their employees; this immunity is not defeated merely because of the "presence or absence of identical private activity, but the broad and just purpose of the Act was to compensate victims of negligence in the conduct of governmental activities * * *" in circumstances "like unto those in which private persons would be liable"; the courts will not be drawn into the "non-governmental" versus "governmental" dispute in determining liability; if the Government undertakes to perform certain acts or functions thus engendering reliance thereon, it must perform them with due care; that obligation of due care extends to the public and the individuals who compose it; the Government is liable for the actions of its employees dealing directly with the public in the application of established policies even if such employees are vested with a measure of discretion, and such liability of the Government for their acts and omissions in all of the respects mentioned is measured by the same rules as the local law applies to a private employer under like circumstances.

The substantive law of liability is furnished primarily by Texas decisions, and none are found which furnish a definite guide to decision of this case. Plaintiffs call our attention to a Texas case permitting recovery for inadequate equipment

resulting in burns received by a patient and holding that, although a hospital is not required to undertake treatment of every ailment that comes, it is bound to supply suitable and safe appliances and instrumentalities when it undertakes treatment;[12] and also to a case allowing recovery by a stranger where a railroad hospital permitted a smallpox patient to escape and transmit the infection.[13] They also cite a case [14] in which recovery was allowed for a patient who escaped from a sanitarium and was killed by a train.

[redacted] Failing to find determinant precedent in Texas law, it will be the duty of the trial Court to look to the general law fixing liability of private institutions for injuries to those towards whom they have a responsibility.[15] It will be its duty to consider the evidence adduced by the parties in the light of this substantive law of negligence and determine whether a case has been made warranting the award of damages. It is not possible, in advance of the introduction of evidence, to mark out explicitly the lines of the Court's duty and discretion.

"In considering the scope of the issues entrusted to juries in cases like this, it must be borne in mind that negligence cannot be established by direct, precise evidence such as can be used to show that a piece of ground is or is not an acre. Surveyors can measure an acre. But measuring negligence is different. The definitions of negligence are not definitions at all, strictly speaking. Usually one discussing the subject will say that negligence consists of doing that which a person of reasonable prudence would not have done, or of failing to do that which a person of reasonable prudence would have done under like circumstances. Issues of negligence, therefore, call for the exercise of common sense and sound judgment under the circumstances of particular cases";—so spoke the United States Supreme Court in Schulz v. Pennsylvania Railroad Co., 350 U.S. 523, 76 S.Ct. 608, 610.

With reference to the allegation that the Provost Marshal promised to notify the detective agency if Haywood was released, the Government takes the position that the Provost Marshal could not bind it because the Air Force Regulations do not include any authority or duty "to aid in any manner civilians not employed by the Air Force." [16] It lists twenty-

12. Medical & Surgical Memorial Hospital v. Cauthorn, Tex.Civ.App.1950, 229 S.W. 2d 932, writ refused N.R.E.

13. Missouri, K. & T. R. Co. v. Wood, 1902, 95 Tex. 223, 66 S.W. 449, 56 L.R.A. 592.

14. Arlington Heights Sanitarium v. Deaderick, Tex.Civ.App.1925, 272 S.W. 497, no writ.

15. See, e. g., 26 Am.Jur., Hospitals and Asylums, Sec. 14, p. 595: "Institutions of a strictly private character * * * are liable to patients as well as to strangers for the negligence of their servants." And see also annotations on the subject found in 22 A.L.R. 341 et seq., 39 A.L.R. 1432, 124 A.L.R. 187, and 37 A.L.R.2d 1285.

16. In addition, the Government takes the position that, under the Texas Law as announced in Houston Milling Co., Inc., v. Carlock, Tex.Civ.App.1944, 183 S.W. 2d 1013, 1014, there would be no liability upon a private employer. We do not agree that this is the effect of the holding of the Texas Court of Civil Appeals. Carlock, et al. had sued Houston Milling Co., Inc., the appellant, along with one Healer for damages resulting from the destruction of Carlock's property by fire. Healer was joined as a defendant in order to confer jurisdiction of the entire suit upon the Court of Brown County where Healer resided. Houston Milling Co. was a resident of Harris County and not of Brown County. The question, as far as it related to Healer, involved venue jurisdiction only.

The trial Court had overruled appellant Houston's plea of privilege because of the presence of the resident co-defendant Healer. The Court of Civil Appeals upheld the action of the trial court in retaining jurisdiction in Brown County, but based its action upon another section of the venue statutes, the section vesting jurisdiction in the county where the cause of action arose. In the course of announcing that conclusion the Appeals Court also stated that either a cause of action was not stated against Healer or "if a cause of action was alleged

five Regulations enumerating the duties of the Provost Marshal to the military establishment, all of which are directed towards accomplishing the smooth functioning of its units in relationship with each other.

But we are not dealing with the duties and liabilities of the military *inter se.* We are testing a liability to which the Government has newly submitted itself, and modeled upon the like liability of an employer for the acts of its agents in their dealings with third persons. These Regulations do not undertake to cover such relationships or the liabilities springing from them. The Provost Marshal was the head of the department having the matter in charge, and his employer (the Government) would be liable for any negligence attributable to him, within the scope of his employment, which would support an action therefor against a private individual under state law and under like conditions.

In the present fluid and relatively uncertain state of the law, this is certainly not a case to dispose of on motion to dismiss the complaint. "* * * A complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. Pleadings are to be liberally construed." The rule is thus stated in 2 Moore's Federal Practice, 2d Ed., p. 2245.[17]

We hold that the complaint is sufficient under the authorities discussed to entitle plaintiffs to a trial on the facts.

Whether the evidence plaintiffs are able to introduce discloses a case of negligence which, under the Act, is actionable, will be determined from those facts projected against the background of the law as delineated in this opinion and in the decisions herein discussed. For the accomplishment of this the judgment of the Court below is reversed and the cause is remanded.

Reversed and remanded.

---

against Healer, it was not the same cause of action alleged against appellant." What was said, therefore, as to whether Healer was liable to Carlock because of Healer's promise to notify Carlock of the events leading to the fire and the subsequent cause of action was said solely in connection with the question of venue. The record does not reflect what, if any, connection Healer had with Houston and does not refer to whether Houston would be liable for Healer's actions under *respondeat superior.*

17. Our case of DeLoach v. Crowley's, Inc., 5 Cir., 1942, 128 F.2d 378, 380, is one of

the bases of the text. There we further stated: "Under the Rules of Civil Procedure a case consists not in the pleadings, but the evidence, for which the pleadings furnish the basis. Cases are generally to be tried on the proofs rather than the pleadings."

The following additional decisions of this Court give support to the quotation from Professor Moore's text: Stanaland v. Atlantic Coast Line R. Co., 5 Cir., 1951, 192 F.2d 432; John Walker & Sons v. Tampa Cigar Co., 5 Cir., 1952, 197 F. 2d 72; Thomas v. Atlantic Coast Line R. Co., 5 Cir., 1953, 201 F.2d 167.