Paul Allen TILDEN, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

Arlene TILDEN, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

Nos. 15506, 15507.

United States Court of Appeals Seventh Circuit.

July 19, 1966.

William G. Conover, Valparaiso, Ind., for appellants.

Morton Hollander, Walter H. Fleischer, Dept. of Justice, Washington, D. C., Alfred W. Moellering, U. S. Atty., Richard F. James, Asst. U. S. Atty., Hammond, Ind., John W. Douglas, Asst. Atty. Gen., David L. Rose, Jack H. Weiner, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before KNOCH and KILEY, Circuit Judges, and MAJOR, Senior Circuit Judge.

MAJOR, Senior Circuit Judge.

These actions were brought under the Federal Tort Claims Act (28 U.S.C.A. Secs. 1346(b) and 2671 et seq.) to recover damages occasioned by the negligence of Specialist 4th Class Ronald R. Wehe while an enlisted member of the Armed Forces of the United States. An action was commenced by plaintiff Paul Allen Tilden, to recover for the wrongful deaths of his three minor children. Another action was commenced by plaintiff Arlene Tilden to recover for personal injuries and expenses incurred in connection therewith. The two cases involve the same factual and legal questions and were consolidated and tried before the District Court without a jury. The Court made its findings of fact, entered its conclusions of law and rendered a judgment adverse to plaintiffs, from which this appeal is taken.

The occurrence giving rise to the controversy took place about 6 p. m. on

Monday, November 19, 1962, when Wehe, driving his automobile at a high rate of speed in a westerly direction on Oakhill Road drove into the intersection of Wagner Road and Oakhill Road in the town of Porter, Indiana, without stopping for a stop sign, and collided with a car owned by plaintiff Paul Allen Tilden and operated by his wife, Arlene Tilden. As a proximate result of such collision, Arlene Tilden suffered personal injuries and the minor children were killed.

The case appears to have been tried in the District Court on two theories, (1) that Wehe was driving his own automobile in line of duty and that the United States was liable for his negligence, and (2) that the government was negligent in permitting Wehe to drive his automobile in an intoxicated condition in violation of an asserted agreement between Wehe's supervisors and a state officer. Plaintiffs here have abandoned the first issue and rely on the second.

On this issue it is ably argued that the government was negligent under the Good Samaritan doctrine by its failure to perform an agreement made between its officials and those of the State of Indiana, by which the activities of Wehe were to be restricted. Further, it is argued that in any event if the restrictive agreement terminated prior to the time of the accident, the government was negligent in not giving notice thereof to the state officials.

We shall first state the unquestioned facts as found by the District Court and follow with those which plaintiffs would have us reject. Wehe was on active duty with the Army on and prior to November 19, 1962. He was assigned to Battery B, 1st Missile Battalion, 60th Artillery, Porter, Indiana (Porter Nike Site). Orders transferring him to Alaska were to become effective on November 20, 1962, at 12:01 a. m. Thereafter, he had thirty days' leave in transit before reporting for duty at his assigned base in Alaska.

Early Saturday, November 17, 1962 (the fatal occurrence took place about 6 p. m. on Monday, November 19), Wehe was arrested by Indiana State Trooper Charles T. Miller, on charges of drunken driving, reckless driving, running a stop sign and property damages. He was placed in the Porter County Jail pending filing of charges. Curtis L. Jordan, Duty Officer at Porter Nike Site, was notified at about 2 a. m., November 17, of Wehe's detention and of the charges to be filed against him. Lt. John F. Bateman picked up Wehe at the jail in the morning of November 17, and transported him to the court of Justice of the Peace of Porter County, Reginald Pomeroy. Wehe entered a plea of guilty to a charge of drunken driving, a fine was imposed and his Wisconsin driver's license suspended in Indiana for a period of one year. Upon payment of the fine, Wehe was returned to Porter Nike Site by Lt. Bateman, who reported the nature of the proceedings and the outcome of the trial to Jordan, who restricted Wehe to the base and ordered him not to drive his car pending review of his case by Capt. Jose Pena, Commanding Officer of Battery B.

Pena made an investigation and on Monday morning, November 19, prior to 9:30 a. m., lifted the administrative restriction which had been imposed upon Wehe. In doing so he determined that no outstanding charges were pending against Wehe and no basis existed for imposing any form of punishment or further restriction. By 9:30 a. m., November 19, Wehe had completed the signing out and clearance procedures in connection with his transfer to Alaska. At approximately the same time, he was released from the Porter Site as a passenger in a military vehicle driven by another enlisted soldier. He was thus released so that he might attend to some business matters and was then to be driven to the residence of his wife and family outside the base. The military vehicle and its driver, without Wehe, returned to the base at or before noon on November 19.

Later in the morning Wehe went to an auto repair shop in Chesterton, Indiana, to have some minor repair work done to his automobile. He returned for the automobile at about 5:30 that evening,

under the influence of intoxicating liquor. About thirty minutes later the car owned and operated by him collided with the car operated by Arlene Tilden, with the consequences already noted. At the time of the collision Wehe was not acting within the scope of his employment or within his line of duty as a member of the Armed Forces.

The sole attack here is upon a portion of Finding 6, Finding 10 and Conclusion of Law No. 2. The disposition of the case here may well depend upon whether such findings and conclusion are approved or rejected.

Finding 6 relates to an agreement between Bateman and Miller, allegedly made prior to the appearance of Wehe in Judge Pomeroy's court. The finding states:

"Officer Miller and Lt. Bateman then discussed the charges to be filed against Wehe. Miller agreed to file the charges in Judge Pomeroy's Court where no jail sentence would be imposed. Lt. Bateman stated that Wehe would be restricted to the Porter Nike Base until he was released from said base to go to Alaska. *Officer Miller and Lt. Bateman contemplated this restriction to be effective for approximately two days until the following Monday.* [Italics supplied.]"

It is only the italicized sentence of which plaintiffs complain.

In connection with the action of Capt. Pena in lifting the administrative restriction, Finding 10 states:

"Under Army regulations, no further basis did exist for imposing any further restriction upon Wehe."

Conclusion of Law No. 2 states:

"Any agreement or undertaking of the United States resulting from communications between Lt. Bateman and Officer Miller was fully performed by the United States."

Contrary to plaintiffs' contention, there is much dispute as to the nature of the agreement, if any, made between Lt. Bateman and Officer Miller regarding the restriction to be imposed upon Wehe. According to Miller, Bateman prior to the filing of the preliminary charges before Judge Pomeroy stated that Wehe was being transferred to Alaska within two days; that if he were sentenced to jail he would miss his shipping date, which would constitute a problem for the Porter Nike Site Commander, and that if Miller would see that Wehe was not sentenced to jail, he would be restricted to the base until he shipped out. With that understanding, Miller filed only the drunken driving charge in a court where no jail sentence would be imposed.

Bateman positively denied that he made any agreement with Miller to restrict Wehe to the base so that he might avoid a jail sentence. At the time sentence was imposed, Wehe, Miller and Bateman were present in court. Judge Pomeroy testified, contrary to the testimony of Miller, that at the time the plea of guilty was entered, he knew nothing about an agreement between Bateman and Miller. According to the testimony of Pomeroy, is was only after the imposition of sentence and when the parties were ready to depart that Bateman stated, "Don't worry, Judge, he is going back to the base with me and he is quarantined until Monday." This statement was made in the presence of Miller, without protest from him. Obviously, the statement made after Wehe's plea had nothing to do with the circumstances under which the plea was entered; however, it does furnish corroboration for defendant's theory that the restriction, if promised, extended only to Monday morning. Certainly, amid this conflicting testimony, there was ample support for the Court's Finding 6.

Subsequent events strongly support the premise that Bateman promised no such restriction as is relied upon by plaintiffs. In the first place, he was without authority to do so. Miller admitted that he knew the case had to be disposed of by the Battery Commander and that any promise by Bateman was subject to his approval. As already shown, Bateman delivered Wehe into the custody of Duty Officer Jordan who de-

tained him pending review of his case by Pena. As a result of his investigation, Pena learned what had transpired in Pomeroy's court and that no other charges were pending against Wehe, and determined that no basis existed for continuing Wehe's administrative restriction. Thereupon, Pena lifted the restriction prior to 9:30 that morning (Monday). Under these circumstances Pena released Wehe to proceed in his new assignment and "required him to sign out."

Plaintiffs contend that the Court's Finding 10 is erroneous because under Army regulations Capt. Pena could have continued Wehe's restriction until his transfer orders became effective at 12:01 a. m. on Tuesday, November 20. Attention is called to 10 U.S.C.A. Secs. 801 and 815. Plaintiffs point out that Wehe was originally arrested on four charges but only that of drunken driving was disposed of in the court proceeding. Pena's investigation, however, revealed that no other charges were pending. He testified that under the circumstances he had no authority to impose further restrictions upon Wehe. Assuming that Pena was aware of what transpired in the court and of the asserted agreement between Miller and Bateman, he also knew that such an agreement was made without authority and that any restriction imposed thereby could have extended only to the time when Bateman delivered Wehe to the Duty Officer. If Pena had imposed a restriction on Wehe, it would not have been that promised by Bateman. It would have been separate and distinct, and unrelated to that relied upon by plaintiffs.

■ We hold that Finding 10 has substantial support and it follows that the Court's Conclusion of Law No. 2 was not improper.

We understand, as noted, that plaintiffs' grounds for reversal are dependent upon the acceptance of their contention that the last sentence of Finding 6 and Finding 10 are without substantial support, and that Conclusion of Law No. 2 is erroneous. Having rejected their contention in this respect, it perhaps is un-

necessary to go further. Even so, the importance of the case leads us to do so.

■ Plaintiffs argue that the United States was negligent because it failed to give notice to the State Police that Wehe had been released from the Nike Site and authorized to proceed to his next post. Of course, the government, as any private employer, is held to its promise. As stated by the Supreme Court, " * * * it is hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance must perform his 'good Samaritan' task in a careful manner." Indian Towing Co., Inc. et al. v. United States, 350 U.S. 61, 64, 76 S.Ct. 122, 124, 100 L.Ed. 48. In the instant case, even on plaintiffs' theory, there was no undertaking by the government to inform the State Police of the release of Wehe to his next post. The agreement was to restrict him to the base until he was released the following Monday to go to Alaska and, as the District Court concluded, this agreement "was fully performed by the United States."

A case illustrative of the point under discussion is Fair et al. v. United States, 5 Cir., 234 F.2d 288, in which the complaint alleged that the Air Force had promised to notify the Barnes Detective Agency if it released a mentally unbalanced officer who had repeatedly threatened the life of a girl whom the agency was guarding, but failed to do so, thereby preventing the agency from taking the safety measures it might otherwise have taken. The complaint sought damages for the death of the girl and her guards. The District Court dismissed the complaint for failure to state a claim upon which relief could be granted. The Court of Appeals in reversing held that the allegations of the complaint were sufficient to entitle plaintiffs to a trial on the facts. In the instant case, the complaint contained no allegation and there is no proof of any promise by government officials to notify state officials of Wehe's release.

If the government performed any promise which it made relative to the re-

striction of Wehe, as the District Court found and with which we agree, there is no basis for the application of the Good Samaritan doctrine. Even so, assuming that the government made and failed to perform the promise relied upon by plaintiffs, we still think they fall short of making a case. This doctrine was discussed in United States v. DeVane, 5 Cir., 306 F.2d 182, 186, wherein the Court stated:

"The worsening question arises under the Good Samaritan doctrine which provides that the negligence of the volunteer rescuer must worsen the position of the person in distress before liability will be imposed. [Citing cases and authorities.]"

 The gist of plaintiffs' argument on this point is that absent the promise allegedly made by Bateman to Miller, the latter would have proceeded in a manner which would have resulted in Wehe's confinement in jail at the time of the fatal occurrence. On this point plaintiffs in their brief state, "Officer Miller, an Indiana State trooper, charged by law with the duty of enforcing the Indiana traffic laws for the protection of the Indiana driving public, had Wehe under arrest and was in the process of performing his duty, namely, filing preliminary charges to hold Wehe until the following Monday, so these charges could be filed in a court having the power to imprison Wehe."

This argument rests upon nothing more than rank speculation. Miller testified that absent his agreement with Bateman, he intended to bring Wehe before Judge Pomeroy for the purpose of setting bond and, if the County Prosecuting Attorney gave his requisite consent, that he intended on Monday morning to file more serious charges in the Circuit Court. Thus, to hold that Wehe would have been in jail from the time he was arraigned before Judge Pomeroy until Monday morning, we must assume that he would have been unable to obtain his release by posting the bond fixed by the Justice of the Peace. This might or might not

have been the case. Assuming, however, that he could not have furnished bail at that time and that Miller had proceeded as he intended, Wehe would have been kept in jail until Monday morning. Whether he would have been retained longer depends upon further assumptions. It must be assumed that the County Prosecuting Attorney would have consented to the filing of charges in the Circuit Court, as Miller intended. If that had been done, Wehe could have entered a plea of guilty and might or might not have received a jail sentence. On a plea of not guilty, he would have been entitled to the fixing of bail, pending trial or disposition of his case. To hold that he would have been in jail at the time of the fatal occurrence it must again be assumed that he would have been unable to post bail.

It is our conclusion that the judgment of the District Court must be affirmed. It is so ordered.