*In re* WAGSTAFF

Docket No. 78-3368. Submitted June 15, 1979, at Grand Rapids.—
Decided November 20, 1979.

    Joseph A. Wagstaff, Jr., was charged with attempted skyjacking
as a result of a 1970 incident. In 1972 Wagstaff was found not
guilty by reason of insanity and was committed to the Center
for Forensic Psychiatry pursuant to the law then in effect. On
November 21, 1974, a jury sitting under the newly-enacted
Mental Health Code found Wagstaff to be a person requiring
treatment by reason of mental illness. He was ordered commit-
ted to the Center for Forensic Psychiatry for a period not to
exceed 60 days. In February, 1975, a hearing was held without
a jury, at which Wagstaff was ordered committed for a period
not to exceed 90 days. In April, 1975, the acting director of the
Center filed a petition for a continuing order on Wagstaff. A
jury was convened to hear Wagstaff's petition for discharge
from the Center, and on August 26, 1975, he was again deter-
mined to be a person continuing to require treatment. Since
that time periodic reviews and hearings on Wagstaff's petitions
for discharge have been held. With these petitions for dis-
charge, Wagstaff has filed jury demands. However, all decisions
have been made by a probate judge sitting in the absence of a
jury. At the most recent determination, Wagstaff's timely de-
mand for a jury was overruled, Emmet Probate Court, Boyd C.
Baird, J. Wagstaff appealed to the Emmet Circuit Court. The
circuit court, Martin B. Breighner, J., affirmed the probate
court. Wagstaff now appeals to the Court of Appeals, by leave
granted. *Held:*

    Under the new Mental Health Code, Wagstaff's petition made
him "an individual asserted not to require treatment" and thus
by definition the "subject of a petition". The disposition of
Wagstaff's petition required a determination of whether Wag-
staff required treatment. The Mental Health Code provides that
the trial of a petitioner's question may be heard by a jury. The

REFERENCES FOR POINTS FOR HEADNOTES
[1, 3] 41 Am Jur 2d, Incompetent Persons §§ 44, 46.
[2, 3] 41 Am Jur 2d, Incompetent Persons §§ 33, 34, 39.

lower court erred in denying Wagstaff's petition for trial by jury as to his need for continuing treatment.

Reversed.

1. MENTAL HEALTH — INVOLUNTARY COMMITMENT — MENTAL INSTITUTIONS — PETITION FOR DISCHARGE — NEED FOR CONTINUED TREATMENT — STATUTES.

An individual who has been committed to a state mental institution and who files a petition for a discharge, pursuant to statutory requirements, asserting that he no longer requires treatment is entitled to an answer to the question of whether he is or continues to be a person requiring treatment; a section of the Mental Health Code provides that the trial of the petitioner's question may be heard by a jury (MCL 330.1458; MSA 14.800[458]).

2. MENTAL HEALTH — INVOLUNTARY COMMITMENT — MENTAL INSTITUTIONS — PERSON REQUIRING TREATMENT — STATUTES.

The state may not hold a person in involuntary hospitalization in a mental institution if he does not meet the statutory standard of a person requiring treatment; further, the state must establish by clear and convincing evidence that the individual is a person requiring treatment (MCL 330.1465, 330.1476[2]; MSA 14.800[465], 14.800[476][2]).

3. MENTAL HEALTH — MENTAL INSTITUTIONS — CONTINUING TREATMENT — INITIAL COMMITMENT — STANDARDS.

The state may not proceed with lower procedural or substantive standards for a determination of whether an individual involuntarily committed to a mental institution requires continuing treatment than those standards used for a determination for initial commitment.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *John F. Salan,* Prosecuting Attorney, for the people.

*Lynn G. Stedman,* for Joseph A. Wagstaff, Jr.

Before: D. F. WALSH, P.J., and M. J. KELLY and E. F. OPPLIGER,* JJ.

E. F. OPPLIGER, J. Petitioner raises the sole issue of whether the subject of a § 484 mental-health

---

* Circuit judge, sitting on the Court of Appeals by assignment.

hearing is entitled to a jury. This appears to be a case of first impression under the Mental Health Code as it was revised by 1974 PA 258 (effective August 6, 1974), MCL 330.1001 *et seq.;* MSA 14.800(1) *et seq.* Petitioner appeals the decision of the circuit court which upheld the probate judge's denial of Joseph Wagstaff's timely demand for a jury in a mental health hearing held pursuant to MCL 330.1484; MSA 14.800(484). We reverse, holding that the Mental Health Code entitles petitioner to have his hearing conducted before a jury.

In a November, 1972 bench trial, petitioner was found not guilty by reason of insanity of attempted skyjacking based on a 1970 incident. Wagstaff was committed to the Center for Forensic Psychiatry pursuant to the law then in effect. In 1974, the Michigan Supreme Court in *People v McQuillan,* 392 Mich 511; 221 NW2d 569 (1974), held unconstitutional commitments to mental institutions of persons found not guilty by reason of insanity without first having accorded them the right to a civil commitment hearing. That same year a Federal district court in *Bell v Wayne County General Hospital at Eloise,* 384 F Supp 1085 (ED Mich, 1974), struck down as overbroad and vague the then existing statutory standards for permanent and temporary mental illness. In response the Michigan Legislature enacted a new mental health code, which is the subject of this appeal.

On November 21, 1974, a jury operating under the newly-enacted Mental Health Code, 1974 PA 258, found Wagstaff to be a person requiring treatment by reason of mental illness. He was ordered committed to the Center for Forensic Psychiatry for a period not to exceed 60 days. In February, 1975, a hearing was held without a jury, at which

petitioner was ordered committed for a period not to exceed 90 days. In April, 1975, the acting director of the Center filed a petition for a continuing order on Wagstaff. A jury was convened to hear Wagstaff's petition for discharge from the Center, and on August 26, 1975, he was again determined to be a person continuing to require treatment.

Since that time periodic reviews and hearings on Wagstaff's petitions for discharge have been held. Petitioner has filed jury demands, but all decisions have been made by the probate judge sitting in the absence of a jury. From the most recent such determination, where Wagstaff's timely demand for a jury was overruled, Wagstaff appeals.

The consideration of petitioner's argument that he is entitled to a jury requires that we piece together a number of sections of the Mental Health Code. First is § 482, under which Wagstaff has sought to enforce his right to periodic review of his condition with a view toward release. That section provides:

"Sec. 482. Every individual subject to an order of continuing hospitalization has the right to regular, adequate, and prompt *review of his current status as a person requiring treatment* and in need of hospitalization. Six months from the date of an order of continuing hospitalization, and every 6 months thereafter, the director of any hospital in which an individual is hospitalized shall review his status as a person requiring treatment and in need of hospitalization." MCL 330.1482; MSA 14.800(482).

Section 483 requires that, in order to accomplish the review contemplated by § 482, the hospital director shall appoint a psychiatrist to examine the patient and make a report to the court. If the report is favorable to the patient, the Code as-

sumes the director will order that the patient be discharged pursuant to § 476. When, however, the report indicates that the patient still qualifies for involuntary hospitalization, § 484 provides as follows:

"Sec. 484. If the report concludes that the patient continues to require treatment and hospitalization, and the patient objects to either or both of those conclusions, the patient shall have the *right to a hearing* and may petition the court for discharge. This petition may be presented to the court or a representative of the hospital within 7 days, excluding Sundays and holidays, after the report is received." MCL 330.1484; MSA 14.800(484).

Thus, § 484 is not itself enlightening on the nature of the "hearing" involved. The procedure for court hearings convened under this chapter of the Code is provided by § 451 to be governed by §§ 451 to 465, section 452(d) explicitly provides the time within which a hearing must be convened to hear a petition for discharge filed pursuant to § 484.

Section 458, which is central to petitioner's jury demand, provides as follows:

"Sec. 458. The subject of a petition may demand that the question of whether he requires treatment or is legally incompetent be heard by a jury. A jury shall consist of 6 persons to be chosen in the same manner as jurors in civil proceedings." MCL 330.1458; MSA 14.800(458).

Section 458 thus calls into play two concepts. One, "the subject of a petition", and two, "whether he requires treatment". The subject of a petition is defined in § 400(f) as follows:

"(f) 'Subject of a petition' means an individual asserted to require treatment, asserted not to require treatment, asserted to be legally incompetent and in need of a guardian, asserted not to be legally incompetent and in need of a guardian." MCL 330.1400(f); MSA 14.800(400)(f).

We can reach no other conclusion than that Wagstaff's petition for discharge pursuant to § 484 makes him "an individual * * * asserted not to require treatment" and thus by definition the "subject of a petition".

Next, does the disposition of Wagstaff's petition require the determination of "whether he requires treatment", as referred to in § 485? The concept of "person requiring treatment" is at the very heart of involuntary commitment under the Mental Health Code. The statutory definition of the term "person requiring treatment" is found in § 401.

Section 468 provides that upon a hearing conducted under the Code, if the court finds that an individual is *not* a person requiring treatment, "the court shall enter a finding to that effect and shall order that he be discharged". Section 476(2) also provides that, without an order of the court,

"[t]he director shall discharge a patient hospitalized by court order when the patient's mental condition is such that he no longer meets the criteria of a person requiring treatment." MCL 330.1476(2); MSA 14.800(476)(2).

Thus, the state may not hold a person in involuntary hospitalization if he does not meet the § 401 standard of a person requiring treatment. Further, under § 465, the state must establish by clear and convincing evidence that the individual is a person requiring treatment.

The simple progression of the Code which we hold entitles Wagstaff to a jury in this case is as follows. Wagstaff's petition for hearing under § 484 demands an answer to the question of whether he is or continues to be a person requiring treatment. Section 451 provides that the conduct of such a hearing is to be governed by §§ 451 to 465. Section 458 provides that the trial of petitioner's question may be heard by a jury.

We reject the contention that the state may proceed with lower procedural or substantive standards for continuing commitment than for the initial commitment. This issue was considered squarely by the Court in *People ex rel Book v Hooker,* 83 Mich App 495; 268 NW2d 698 (1978). There, the state sought to employ a lower substantive standard for a 90-day commitment than that applied in seeking the initial 60-day commitment. In *Hooker* this Court rejected the attempt to employ the undefined lower standard of "a person continuing to require treatment" which could be based on the general opinion of a psychiatrist.

"Such a construction would be contrary to the purpose of the Legislature which, in enacting the statute, intended to provide objective criteria for involuntary commitments and made the process fundamentally judicial rather than medical." 83 Mich App at 501.

We find the reasoning of *Hooker* sound, and here too we reject the attempt to apply lower standards to the determination of continuing need for treatment. The lower court reasoned that if the Legislature intended to provide for a jury trial at continuing treatment hearings, it would have been more specific. Under some circumstances this type of narrow statutory construction might be appropriate. However, in light of the infringement of a

patient's constitutional right to liberty imposed by involuntary commitment, no such limited legislative intent should be read into §§ 484 and 458.

The right to a jury trial on the question of continuing need for treatment is an added burden on the Probate Court and militates against the routine handling of continuing treatment cases. This is not inconsistent, however, with the orderly commitment of those who by clear and convincing evidence meet the statutory definition of a person requiring treatment.

For the reasons set forth above, we hold that the lower courts erred in denying Wagstaff's petition for trial by jury as to his need for continuing treatment.

Reversed. No costs, a public question being involved.