Warner CHRITE, Personal Representative of the Estate of Catherine Chrite, deceased, Plaintiff,

v.

**UNITED STATES of America, Defendant.**

Civ. No. 81–73844.

United States District Court, E.D. Michigan, S.D.

May 26, 1983.

---

Jeffrey N. Shillman, Southfield, Mich., for plaintiff.

Geneva Halliday, Asst. U.S. Atty., Detroit, Mich., for defendant.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I.

Plaintiff brings this case under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.,* for damages occasioned by the negligence of a Veterans Administration hospital in releasing a mental patient at the hospital by the name of Henry Oswald Smith (Smith) who six months later murdered his mother-in-law, Catherine Chrite (Chrite).

The FTCA makes the United States liable "... in the same manner and to the same extent as a private individual under like circumstances ..." 28 U.S.C. § 2674. Section 2674 lists the particular violations for which the government has consented to be sued. The government's consent to be sued is limited by the discretionary exemption, 28 U.S.C. § 2680(a), which reads:

"The provisions of this chapter ... shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

The United States has moved for summary judgment on the grounds: (1) the exemption in 28 U.S.C. § 2680(a) for discretionary functions bars plaintiff's claim; (2) there was no duty to restrain Smith beyond the period provided by Michigan law; and (3) there was no duty to warn Chrite of the dangerous propensities of Smith.

A hearing was held on March 1, 1983. On March 3, 1983, the Court entered an order denying summary judgment on the

discretionary function ground [1] and took the remainder of the motion under advisement.

## II.

Under Michigan's Mental Health Code, Mich.Stat.Ann. § 14.800(1) *et seq.,* [M.C.

1. The discretionary function exemption does not bar plaintiff's claim. *See Fair v. United States,* 234 F.2d 288 (5th Cir.1956); *White v. United States,* 317 F.2d 13 (4th Cir.1963); *Underwood v. United States,* 356 F.2d 92 (5th Cir.1966); *Downs v. United States,* 522 F.2d 990 (6th Cir.1975).

In *Schindler v. United States,* 661 F.2d 552 (6th Cir.1981), the Court of Appeals for the Sixth Circuit held that governmental immunity under Michigan law did not apply to a negligence action brought against the United States under the Federal Tort Claims Act.

"It is, therefore, self-defeating and illogical to hold that the United States may have waived its immunity with regard to a particular act because it is not a discretionary function, and then turn to the law of the state and incorporate the means by which it has chosen to solve this same problem of preserving the necessary 'vestige of governmental immunity'."

661 F.2d at 560. *See also, Raymer v. United States,* 660 F.2d 1136, 1140 (6th Cir.1981) (the pertinent inquiry is whether state law makes a private individual not the state or other political entity liable).

2. Relevant provisions of the Mental Health Code, M.S.A. §§ 14.800(1) *et seq.,* [M.C.L.A. § 330.1001 et seq.] provide:

M.S.A. § 14.800(401) [M.C.L.A. § 330.1401]:
"As used in this chapter, 'person requiring treatment' means (a), (b), or (c):

(a) A person who is mentally ill, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself or another person, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

(b) A person who is mentally ill, and who as a result of that mental illness is unable to attend to those of his basic physical needs such as food, clothing, or shelter that must be attended to in order for him to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs.

(c) A person who is mentally ill, whose judgment is so impaired that he is unable to understand his need for treatment and whose continued behavior as the result of this mental illness can reasonably be expected, on the basis of competent medical opinion, to result

L.A. § 330.1001 et seq.], the initial period of commitment is usually sixty days. *See,* M.S.A. §§ 14.800(472)(1), [M.C.L.A. § 330.-1472(1) ].[2] In fact, a hospital may be liable if it holds a person beyond the sixty day commitment order and it is later deter-

in significant physical harm to himself or others . . . ."

M.S.A. § 14.800(405)(1) [M.C.L.A. § 330.-1405(1) ]:
"Any medical or psychiatric facility operated by the United States veterans administration may if it agrees accept patients under any applicable provision of this chapter and may at its discretion avail itself of any other provision of this chapter."

M.S.A. § 14.800(434)(1) [M.C.L.A. § 330.-1434(1) ]:
"Any person 18 years of age or over may file with the court a petition which asserts that an individual is a person requiring treatment as defined in section 401."

M.S.A. § 14.800(444) [M.C.L.A. § 330.1444]:
"If the director determines as a result of an examination that no alternative to hospitalization is preferable and available, the individual may be hospitalized under the applicable provisions of this chapter."

M.S.A. § 14.800(458) [M.C.L.A. § 330.1458]:
"The subject of a petition may demand that the question of whether he requires treatment or is legally competent be heard by a jury."

M.S.A. § 14.800(465) [M.C.L.A. § 330.1465]:
"A judge or jury shall not find that an individual is a person requiring treatment unless that fact has been established by clear and convincing evidence."

M.S.A. § 14.800(468)(2)(a) [M.C.L.A. § 330.-1468(2)(a) ]:
"If an individual is a person requiring treatment, the court may (a) order the individual hospitalized in a hospital designated by the department."

M.S.A. § 14.800(472)(1) [M.C.L.A. § 330.-1472(1) ]:
"An initial order of hospitalization shall be for a period not to exceed 60 days."

M.S.A. § 14.800(472)(2) [M.C.L.A. § 330.-1472(2) ]:
"If, prior to the expiration of a 60 day order, the director believes that the condition of a patient is such that he continues to require treatment, the director shall, not less than 14 days prior to the expiration of the order, petition the court for a determination that the patient continues to require treatment and for an order authorizing hospitalization for a period not to exceed 90 days."

M.S.A. § 14.800(472)(3) [M.C.L.A. § 330.-1472(3) ]:

mined the individual was not a "person requiring treatment" (PRT). *Matter of Wagstaff,* 93 Mich.App. 755, 287 N.W.2d 339 (1979). Once the determination is made that the person committed is no longer a PRT, the hospital must seek a judicial order to restrain the patient beyond the sixty days of the original commitment. *See,* M.S.A. § 14.800(472)(2); § 14.800(472)(3) [M.C.L.A. §§ 330.1472(2), 330.1472(3)].

### III.

■ The Michigan Supreme Court has not ruled whether, under the factual circumstances alleged in this case, there is a duty to restrain an individual beyond a sixty day commitment order or a duty to warn third persons of an individual's dangerous propensities when he or she is released from a mental institution.

"The State's highest court is the best authority on its own law. If there be no decision by that court, then federal authority must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the state. In this respect, it may be said to be, in effect, sitting as a state court." *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956). While the "lower courts" should be "attributed some weight . . . the decision is not controlling". *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967), citing *King v. Order of Travelers,* 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948).

"[A]n intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a feder-

al court unless it is convinced by other persuasive data that the highest court of a state would decide otherwise."
*Estate of Bosch, supra,* 387 U.S. at 465, 87 S.Ct. at 1782 citing *West v. A.T. & T. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). The federal court may not be bound even by an intermediate state appellate court ruling. *Estate of Bosch, supra* 387 U.S. at 465, 87 S.Ct. at 1782. To give plenary consideration to a state law claim, an educated guess must be made as to what the state's highest court would decide. *Ann Arbor Trust Company v. North American Company For Life and Health Insurance,* 527 F.2d 526, 527 (6th Cir.1975), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2206, 48 L.Ed.2d 818 (1976). Here the Court must determine whether the Michigan Supreme Court would hold defendant had a duty to restrain Smith beyond the sixty day commitment order or a duty to warn Chrite of Smith's dangerous propensities.

### IV.

#### A.

■ There was no statutory obligation to keep Smith in custody beyond the sixty day order because it was determined that he was no longer a PRT. The most that defendant was obligated to do or could do under Michigan law was to seek an extension of the commitment order if it found Smith to be a PRT. It would then be up to a jury to decide whether or not to extend custody. *See* M.S.A. § 14.800(458) [M.C.L.A. § 330.1458]. Therefore, there appears to be no cause of action for failure to restrain Smith as such.

"If, prior to the expiration of a 90 day order, the director believes that the condition of the patient is such that he continues to require treatment, the director shall, not less than 14 days prior to the expiration of the order, petition the court for a determination that the patient continues to be a person requiring treatment and for an order of continuing hospitalization. An order of continuing hospitalization may be for an unspecified period of time."
M.S.A. § 14.800(476)(1) [M.C.L.A. § 330.-1476(1)]:

"The director may at any time discharge a voluntarily or judicially hospitalized patient whom the director deems clinically suitable for discharge."
M.S.A. § 14.800(476)(2) [M.C.L.A. § 330.-1476(2)]:
"The director *shall* discharge a patient hospitalized by court order when the patient's mental condition *is* such that he *no longer* meets the criteria of a person requiring treatment." (emphasis added)

### B.

There is a difference between warning third persons of an individual's dangerous propensities and keeping a patient in custody. Although the Michigan Supreme Court has not directly addressed the question whether there is a common law duty to warn third persons when an individual is released from a mental institution,[3] there is analogous case law in Michigan and in other states to support the proposition.

The leading case establishing a duty to warn a third person when a doctor believes the patient is potentially harmful to that third person is *Tarasoff v. Regents of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (Cal.1976). In *Tarasoff,* the patient killed a woman two months after he had confided to his psychotherapist his intention to kill her. The Supreme Court of California noted that liability attaches only when a duty is owed based on some special relationship to the dangerous person or to the potential victim. The psychotherapist-patient relationship satisfied this requirement. The court held plaintiff stated a cause of action by asserting the psychotherapist determined the patient was a threat to the victim or, pursuant to the standards of the medical profession should have so determined, but failed to exercise reasonable care to protect her from that danger.

More recently in *Thompson v. County of Alameda,* 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980), the Supreme Court of California emphasized that *Tarasoff* involved a foreseeable and identifiable victim. While the court held the intended victim need not be specifically named, the victim must be "readily identifiable".

In *Davis v. Dr. Yong-Oh Lhim,* 124 Mich. App. 291, 335 N.W.2d 481, Docket No. 59284 (March 21, 1983), the Michigan Court of Appeals adopted the reasoning of *Tarasoff* and *Thompson.*[4] The defendant, a staff psychiatrist at Northville State Hospital, released a patient who two months later killed his mother. The court, relying on *Tarasoff,* held that the psychiatrist had a duty to warn the decedent of the patient's dangerous propensities. Although the court stated that psychiatrists do not have a duty to the public at large,[5] the court did recognize a duty to "readily identifiable" victims.

> "We agree with *Thompson,* therefore, that a psychiatrists' duty to exercise reasonable care in protecting others foreseeably endangered by his patient extends only to potential victims who are 'readily identifiable'.
>
> ... when a psychiatrist determines, or pursuant to the standard of care of his profession should determine, that his patient poses a serious danger of violence to

3. Most cases in Michigan never reach the duty to warn question because they are dismissed under the governmental immunity provisions of the Michigan Tort Claims Act, M.S.A. § 3.996(107) [M.C.L.A. § 691.1407]. For example, *see Fuhrmann v. Hattaway,* 109 Mich. App. 429, 311 N.W.2d 379 (1981); *Perry v. Kalamazoo State Hospital,* 404 Mich. 205, 273 N.W.2d 421 (1978); *In Re Jones Estate,* 52 Mich.App. 628, 218 N.W.2d 89 (1974) *lv. den.,* 392 Mich. 770 (1974). In *Knight v. Michigan, infra,* the Michigan Court of Appeals held there was a duty on the part of the Michigan Department of Mental Health to warn third persons of a mental patient's known propensity to set fires. Inexplicably, the court in *Knight* simply did not address immunity.

4. An application for rehearing is pending. In an earlier case, *In Re Jones Estate,* 52 Mich. App. 628, 218 N.W.2d 89 (1974), *lv. den.,* 392 Mich. 770 (1974) the court expressed fear that

recognizing a cause of action against psychiatrists would open the floodgates of litigation by holding doctors and mental institutions liable for the actions of every mental patient. Inferentially *Davis* resolved this fear by adopting the *Thompson* court's qualification that the victim must be foreseeable or identifiable.

5. Defendant here argues that *Rogers v. Horvath,* 65 Mich.App. 644, 237 N.W.2d 595 (1975) establishes no duty is owed to third persons when an individual is released from a mental institution. However, in *Rogers,* no underlying doctor-patient relationship was found to exist which would impose a duty on the physician. The record here indicates an underlying doctor-patient relationship. The patient was treated by a doctor at the Veterans Administration hospital who diagnosed his condition and who, along with other staff members, treated him on a daily basis. *Rogers* does not bar plaintiff's claim.

a readily identifiable person, the psychiatrist has a duty to use reasonable care to protect that individual against such danger." [6]

Davis, supra, slip op. at 10.

Davis relies on Knight v. State of Michigan, 99 Mich.App. 226, 297 N.W.2d 889 (1980), to support its conclusion. In Knight, the court recognized that there was a duty on the part of the Michigan Department of Mental Health to warn third persons of a mental patient's known propensity to set fires. When the patient was placed on plaintiffs' farm as a therapeutic measure no disclosure was made regarding his firesetting propensities. The patient subsequently set several fires, one of which destroyed the entire contents of plaintiffs' barn. In recognizing the existence of a duty between the hospital and the plaintiffs the court relied on Restatement (Second) of Torts § 319:

"One who takes charge of a person having known propensities for danger is under a duty to exercise reasonable care to control the third person and prevent him from harming others."

Therefore, the court held the department had a duty of reasonable care to inform third persons of any limitations or destructive tendencies which were known or which became known to the hospital subsequent to the time of the patient's placement on the farm. [7]

■ Based on the foregoing analysis it appears that the Michigan Supreme Court would hold that defendant could be liable for failing to warn Chrite of Smith's dangerous propensities when he was released from custody.

V.

Defendant also argues that there is no allegation that Chrite was a target victim. However, it can be argued that she was readily identifiable or a target since on January 22, 1980, the date commitment was recommended by the Veterans Administration doctor, a note was written presumably in Smith's own hand which reads:

"Was Henry O. Smith Here Yesterday. He is wanted for murder Mother in Law." [8]

This written statement is similar to the evidence involved in Davis, supra. There, the only evidence establishing the decedent was a readily identifiable victim consisted

---

**6.** This concept of foreseeability was also noted in In Re Jones Estate, supra, where the court said:

"the custodian of an insane person ordinarily is not liable for the tortious acts of such person which he could not reasonably anticipate, but he may be liable where he fails to exercise reasonable care under the circumstances."

(emphasis added) 52 Mich.App. at 635, 218 N.W.2d 89 (citing 44 C.J.S., Insane Persons, § 125, at 282).

**7.** The court in Knight also noted that the existence of such a duty was interrelated with the concept of foreseeability relying on McNeal v. Henry, 82 Mich.App. 88, 266 N.W.2d 469 (1978), and Holloway v. Martin Oil Service, Inc., 79 Mich.App. 475, 262 N.W.2d 858, lv. den., 402 Mich. 932 (1978). McNeal is similar to Samson v. Saginaw Professional Building, Inc., 393 Mich. 393, 224 N.W.2d 843 (1975), where the court held that a landlord and owner of a building who leased space to a state mental clinic owed a duty to protect another co-tenant's employee from a foreseeable attack by one of the clinic's patients. In recognizing this duty the Michigan Supreme Court noted:

"[W]e prefer to recognize and uphold that duty in these types of relationships, leaving it to the jury to determine the ultimate questions which may impose liability, those of foreseeability, reasonableness, and proximate cause."

393 Mich. at 409, 224 N.W.2d 843.

In McNeal, a customer was beaten to death in defendant's store. Plaintiff alleged the store was negligent in failing to react in time to stop the fight between plaintiff's decedent and the assailant. The court held that, as a matter of law, the duty to guard against such bizarre circumstances was beyond the defendant's duty of reasonable care to the invitee. McNeal has been criticized as conflicting with the Michigan Supreme Court's analysis in Samson. See Vogan, Torts, 1978 Annual Survey of Michigan Law, 25 Wayne L.Rev. 673, 699–701 (1979). Samson held that the determination of whether the criminal attack in the store was foreseeable was in the first instance for the jury to decide.

**8.** Brief in support of defendant's Motion for Summary Judgment, Appendix, p. 5(a).

of one entry in the hospital record relating that the patient was threatening his mother for money. The court there upheld the jury's finding that this evidence was sufficient to impose a duty on the part of the psychiatrist to protect the decedent against the patient's dangerous tendencies.

■ The question of whether Chrite was "readily identifiable" or foreseeable is not appropriate for disposition on a motion for summary judgment under the circumstances.

#### VI.

Accordingly, defendant's motion is DE-NIED.[9]

SO ORDERED.

---

9. The United States makes no claim that it is not responsible for the failure of whatever duty is imposed on the doctor who had charge of Smith's case.